IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

VOLVO CARS OF NORTH AMERICA, )
INC., f/k/a VOLVO NORTH )
AMERICA CORPORATION, and )
VOLVO GM HEAVY TRUCK )
CORPORATION, f/k/a VOLVO )
WHITE TRUCK CORPORATION, )
                                      )
      Plaintiffs, )
                                      )
  v. )                  2:95CV00571
                                      )
UNITED STATES OF AMERICA, )
                                      )
      Defendant. )

<u>MEMORANDUM OPINION</u>

OSTEEN, District Judge

    This matter is before the court on Defendant United States of America's motion to alter or amend the court judgment as a matter of law entered on August 12, 1997, and Defendant's motion to strike the affidavit of Donald Shumaker ("Shumaker"). The court is presented with the question of whether Volvo is entitled to a refund of any or all tax paid for inventory shipped in 1983. For the reasons discussed herein, the court will grant both motions.

I.    PROCEDURAL FACTUAL BACKGROUND

    The facts underlying the motion have been discussed in the court's August 12, 1997, memorandum opinion. Plaintiff Volvo Cars of North America, Inc. ("Volvo"), brought this action seeking corporate income tax refunds for the years 1983 through

1989.  There were two issues presented to the jury as special interrogatories, the first of which was bifurcated.  The first question was whether Volvo made bona fide sales of inventory to Sajac, Inc. ("Sajac") between September 1, 1981, and April 6, 1983, and then between April 6, 1983, and December 1990.  The second question was whether all of the events necessary for Volvo to claim the interest deduction on its 1981 and 1983 tax liabilities were completed in 1990.

The jury entered a verdict in favor of Volvo on both issues, and Defendant moved for judgment as a matter of law.  The court in its August 12, 1997, memorandum opinion and judgment granted Defendant's motion for judgment as a matter of law as to the sale of inventory from 1981 through April 6, 1983, but denied the motion as to the sale of inventory from April 6, 1983, through 1989 and to the interest deduction issue.  Volvo's claim for a refund of taxes paid in 1983 was denied as moot.

The evidence presented at trial focused on the nature of inventory transfers completed under two different contracts with Sajac.  When Volvo acquired the assets of the bankrupt White Motor Corporation ("WMC") in 1981, it assumed a contract ("the first contract") entered into by Sajac and WMC.[1]  The court found

---

[1] Sajac purchased excess inventory from manufacturers at scrap prices, speculating that the manufacturers would repurchase a significant portion of the inventory at a considerable mark-up from the scrap price.  Sajac also sold its inventory to scrap and
(continued...)

2

in its August 12, 1997, memorandum opinion that, pursuant to the first contract, Volvo shipped excess truck parts to Sajac from September 1981 through April 6, 1983. The first contract explicitly provided that Sajac was obligated to purchase all inventory offered for sale by Volvo, that Volvo controlled the scrapping of the inventory by Sajac, that Volvo determined whether Sajac could alter inventory, and that Volvo maintained the right to repurchase Volvo inventory from Sajac. Therefore, the court in its August 12, 1997, judgment granted Defendant's motion for judgment as a matter of law as to transfers occurring under the first contract because it found that there was no legally sufficient basis upon which a reasonable jury could have found that Volvo ever relinquished control of its inventory.

In April 1983, Volvo entered into a new contract ("the second contract") with Sajac.[2] The second contract provided that Sajac purchase mutually agreed upon inventory from Volvo, that Sajac arrange for shipment of the inventory, and that all risk of loss pass to Sajac. In addition, the second contract did not

---

[1](...continued)
surplus dealers. Sajac sold its entire Volvo inventory to Lippert Enterprises, Inc., in 1991, after Sajac's parent company decided to close the division because the Internal Revenue Service's ("IRS") position on the same tax issues presented in this action made Sajac's operations unprofitable.

[2] Sajac modified its standard contract with manufacturers as the result of several Tax Court decisions finding that no bona fide sales had occurred under terms virtually identical to those of the first contract.

3

grant Volvo the right to repurchase inventory, did not prevent
Sajac from disposing of the inventory however it wished, did not
give Volvo the right to have notice of disposal of the inventory
by Sajac, and did not grant Volvo the right to audit Sajac's
maintenance of Volvo parts.  After considering the record as to
the nature of the interaction between Volvo and Sajac under the
second contract, the court found that there was a legally
sufficient basis upon which a reasonable jury could conclude that
Sajac exercised control of the Volvo inventory.

II.  DISCUSSION

The issue before the court is whether it is possible to
determine from the record which, if any, transfers in 1983
occurred pursuant to the second contract, thereby determining the
amount of refund to which Volvo is entitled.  Both parties
stipulated that after trial the court would determine the amount
of tax refunds owed to Volvo.  Volvo contends that any shipments
made in 1983 were pursuant to the second contract, offering the
post-trial affidavit of Shumaker as the only proof of its
contention.  Plaintiff argues that the record should be reopened
because the issue of when inventory was shipped to Sajac during
1983 did not arise until after the court granted Defendant's
motion for judgment as a matter of law on transfers under the
first contract.  Plaintiff further argues that the court's August
12, 1997, judgment left open the question of whether Volvo was

entitled to a refund for inventory transferred in 1981 and 1982 (referred to by the parties as the opening balance sheet question).

Defendant, on the other hand, argues that it could reasonably be expected that there would be an issue of when any 1983 transfers occurred because of the bifurcation of the sales question at trial based on the two contracts. Volvo, therefore, either knew or should have known that such evidence would be relevant to the court's tax calculations if, for example, the jury had only determined that sales under the second contract were bona fide. Further, Defendant contends that it discussed

5

this matter in its motion for summary judgment,[3] and it submitted exhibits on this issue at trial.

Plaintiff submitted the affidavit of Shumaker on January 23, 1998, in response to Defendant's contention that no 1983 sales occurred under the second contract. Shumaker stated that, based

---

[3] Defendant stated,

> [b]ecause the first contract did not result in Volvo losing control of the inventory transferred pursuant to it and <u>because there is no event in 1983 that Volvo can point to that resulted in its losing control of the inventory</u>, the United States is entitled to summary judgment with respect to Volvo's refund action insofar as it concerns Volvo's 1983 tax year.

(Def.'s Br. Supp. Partial Summ. J. at 35.)

Moreover, Defendant unequivocally stated that

> [t]he plaintiffs, however, have produced no evidence concerning when the inventory transfers occurred during 1983 despite the United States' discovery requests for such information. Because the plaintiffs have the burden of proof in this proceeding and because they had the opportunity to retain such records, unless they can produce some evidence concerning <u>when</u> they transferred inventory to Sajac during 1983, it must be presumed that the transfers were made pursuant to the first contract.

(<u>Id.</u> at 33 n.8.) Further, Plaintiff's complaint sought recovery of $2,807,902.00, which contemplated the taxes Plaintiff asserts it paid for inventory sold under both contracts in 1983. Because Plaintiff has readily divided that amount into two parts, <u>see infra</u> n.7, it cannot claim that it was unaware that timing was an issue at trial.

Defendant's summary judgment argument assumes that all 1983 transfers occurred under the first contract. Therefore, Plaintiff's contention that this issue has never been raised is unpersuasive.

6

on Volvo's accounting records, Volvo transferred all inventory to Sajac in 1983 under the second contract. However, during discovery when Defendant requested Volvo's accounting records concerning inventory transfers to Sajac, Volvo did not produce any documents and instead informed Defendant that it had no records concerning transfers in 1981, 1982, or 1983. Defendant contends that Shumaker should not be permitted to testify post-trial as to the contents of documents never produced during discovery and not introduced at trial to contradict evidence introduced by Defendant showing that no transfers occurred under the second contract until 1984. In addition, Defendant argues that Shumaker's affidavit should be stricken as inadmissible hearsay, especially since Defendant had no opportunity to cross-examine Shumaker on these issues.

Further, Defendant contends that Shumaker's affidavit is inconsistent with his sworn deposition testimony. During his deposition, Shumaker testified that inventory allocated to Volvo's 1983 tax return was actually transferred to Sajac during 1981 and 1982. The 1983 inventory allocation included the $5.2 million of inventory acquired from WMC, the subject of the opening balance sheet issue.[4] Specifically, Shumaker stated the

---

[4] Initially, Volvo did not include this inventory on its opening balance sheet. Volvo reasoned that the transaction was negated because Volvo paid scrap price to acquire the inventory from the bankrupt WMC and then sold the inventory to Sajac for
(continued...)

7

following: (1) he prepared Exhibit H, a summary of Volvo's activity with Sajac (Shumaker Dep. at 154); (2) the left-hand column of Exhibit H represents the dollar amount of inventory Volvo transferred to Sajac in each year (Id. at 160-61); (3) Volvo inherited $5.2 million of inventory from WMC in 1981, which it shipped to Sajac (Id. at 161-63); (4) the $5.2 million figure was later adjusted to $6.1 million in connection with Volvo's LIFO election (Id.); (5) this amount of inventory was reflected on Exhibit H as having been shipped to Sajac during 1981, 1982, and 1983 (Id.);[5] (6) although Exhibit H indicates that some of this inventory had been shipped in 1983, the original work papers reflected in this inventory had actually been transferred to Sajac in 1981 and 1982 (Id. at 164-65); and (7) the amount of inventory allocated as having been transferred to Sajac in 1983 came in part from an analysis of Volvo's general ledger, and the ledger does not reflect the time when the actual physical move of the inventory to Sajac had occurred (Id. at 164).

---

[4](...continued)
scrap price. To preserve its LIFO election, however, Volvo was required after an audit to include the acquired inventory on its opening balance sheet and to value the goods at standard cost.

[5] Plaintiff stated that tax year 1983 encompassed 1981 and 1982 dealings with Sajac. (Pl.'s Tr. Br. at 4 n.3.) Further, Plaintiff admitted that the IRS disallowed Volvo's LIFO election, "citing the sales of inventory to Sajac in 1981 and 1982 as a primary factor. . . . In order to keep its LIFO election, the IRS required Volvo to add the inventory already sold to Sajac back to its opening balance sheet . . . even though Volvo no longer owned the inventory." (Pl.'s Resp. Def.'s Mot. Limine at 2-3.)

8

While the parties stipulated that the court would complete the necessary calculations following the jury verdict, there is no mention in the transcript of a second trial or hearing on the numbers involved.  Plaintiff argues that the court should reopen the record pursuant to Federal Rule of Civil Procedure 43(e), which states that "[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition."  First, the court may only consider such evidence when the motion is based on facts not in the record.  The court finds, however, that the record shows that any transfers to Sajac occurred under the first contract.  Government exhibits entered into evidence support the conclusion that Volvo shipped inventory up to the spring of 1983 and then suspended shipping inventory to Sajac for the remainder of the year because there were concerns about the language in the first contract.  Specifically, Exhibits PP and QQ show that Volvo suspended shipping inventory to Sajac in the spring of 1983, and Exhibit SS shows that Volvo did not resume shipping inventory until 1984.

Regardless, the court finds that it would not be proper for one party to submit an affidavit based on business documents not in evidence to resolve this issue when it had been raised at trial and the party making the submission had not produced such

9

documents.[6]  Further, the Fourth Circuit has held that Rule 43(e) is "more commonly used to resolve preliminary issues in connection with jurisdictional or related types of motions," not in resolving motions pending at the close of trial.  Spivey v. United States, 912 F.2d 80, 84 (4th Cir. 1990) (finding that consideration of a post-trial affidavit in ruling on an undecided motion in limine after the trial was error).  The Spivey court also stated that such an issue should not have been resolved by affidavits in any case.  See id.  Therefore, the court will strike Shumaker's post-trial affidavit.

The court finds unpersuasive Plaintiff's contention that the transfers that took place under the first contract were somehow transformed into bona fide sales once Volvo entered into the second contract with Sajac.[7]  The new contract covered inventory sales that took place after April 6, 1983.  Those that took place

---

[6] The court notes that the documents supplied by Plaintiff to Defendant allegedly supporting Shumaker's affidavit, in addition to being very difficult to read, do not indicate in any way that sales occurred in 1983 under the second contract.  (See Attachment to Def.'s Reply Mot. Strike Shumaker Aff.)

[7] The court is unpersuaded by Plaintiff's equitable recoupment argument.  Plaintiff contends that the court should use this doctrine to permit recovery of taxes paid on sales that occurred under the first contract to avoid the injustice that would result if the court "ignore[d] the jury verdict in this case and [awarded] no refund for 1983."  (Pl.'s 6/29/2000 Letter to the Court at 5.)  The court already has determined as a matter of law that the transfers occurring under the first contract, which ended April 6, 1983, were not bona fide sales.  Therefore, the court sees no need to use equity to accomplish that which the court held was not possible as a matter of law.

pursuant to the first contract were still bound by the terms of the first contract.  There is nothing in the record that indicates otherwise.  In fact, even Plaintiff acknowledged that "sales of inventory to Sajac during the 1981 and 1982 tax years were not deductible so long as the repurchase option or other tainted language of the [first contract] governed the form of the transactions."  (Pl.'s Br. Supp. Claim for 1983 Refund at 4.) Plaintiff contends that the new contract controls transactions that took place under a different contract.  However, the existence of a legitimate sales contract under which later inventory is sold in no way affects the terms of the prior contract.

Plaintiff argues that this finding means that Volvo can never claim a deduction for the transfers that took place under the first contract.  That would be true to the extent that Volvo still exercised control over inventory as dictated by the first contract.  As Defendant noted in a June 30, 2000, letter to the court, "The government's position is that Volvo could write off such inventory in the tax year that Volvo lost control over it." (Def.'s 6/30/2000 Letter to the Court at 5.)  Thus, it is possible that Sajac's sale of all Volvo inventory to Lippert Enterprises in 1991 ended Volvo's control of the inventory, or some other event may have occurred that would have altered Volvo's control.  However, the question before the court is

11

whether Volvo exercised control over the inventory transferred to Sajac under the first contract during 1983.

The court finds that Volvo retained control of the inventory acquired from WMC in 1981 pursuant to the terms of the contract through 1983. In addition, the court finds that there is nothing in the record to show that the terms of the first contract were ever modified to affect Volvo's control over transferred inventory. Therefore, Volvo is not entitled to a refund for the transfers relating to the opening balance sheet issue. Based on the record before it, the court further finds that all transfers to Sajac that took place in 1983 occurred before April 6, 1983, under the first contract.[8]

III. CONCLUSION

For the reasons stated in the memorandum opinion, Defendant United States of America's motion to strike Donald W. Shumaker's affidavit and Defendant's motion to alter or amend the judgment entered on August 12, 1997, will be granted.

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

---

[8] Plaintiff stated that the amount of tax related to the opening balance sheet is $1,782,202.00, and that the taxes related to the disputed 1983 transfers amount to $1,025,700.00, resulting in a total tax assessment in 1983 of $2,807,902.00.

This the 7th day of September 2007.

                                              /s/ William L. Osteen
                                              United States District Judge